UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AMANDA S. G.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:18-CV-304 JD |
| | ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Amanda G. applied for social security disability insurance benefits and supplemental security income, alleging that she is unable to work due to her severe mental impairments of bipolar disorder, anxiety, and depression. In formulating Ms. G.'s residual functional capacity, the ALJ improperly evaluated opinion evidence demonstrating Ms. G.'s difficulties with concentration, persistence, and pace and with social functioning. In addition, although the ALJ considered new Listings 12.04 and 12.06, the ALJ relied on opinion evidence given under the prior listings without acknowledging the changes and did not properly discuss why Ms. G. does not meet the Listings. Remand is required for these reasons.

## I. FACTUAL BACKGROUND

Until she stopped working in 2008, Ms. G. had worked as a certified nursing assistant and a bench press operator. Ms. G. has some physical impairments, which include lower back pain from a motor vehicle collision in 2001, but they are not severe for purposes of the disability determination. Ms. G. suffers from the mental impairments of bipolar disorder, anxiety, and

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

depression, all of which the ALJ found to be severe. Ms. G.'s treatment history includes diagnoses for major depressive disorder, severe without psychotic features, and generalized anxiety disorder in 2007. Over the years she was treated for her psychological disorders and was prescribed medication. In 2013, Ms. G. was diagnosed with bipolar disorder, most recent episode depressed, and anxiety disorder. From 2012 to 2017, Ms. G. received medication management at the Bowen Center, the records of which reveal an ongoing attempt to identify the most effective medication. In February 2017, Ms. G. reported at her medication management appointment that she was "just surviving," rating her depression as a 9/10. AR 1309. Although she attended some counseling in 2012, Ms. G. did not respond to requests for further appointments.

The ALJ held a hearing on Ms. G.'s first application for benefits in August 2013, and, on January 14, 2014, the ALJ found Ms. G. not disabled. On September 17, 2014, the Appeals Council denied Ms. G.'s request for review, and Ms. G. filed a civil action under cause number 1:14-cv-356, challenging the unfavorable January 14, 2014 decision. Meanwhile, Ms. G. filed new applications for benefits in October 2014, which were denied initially and upon reconsideration. On October 4, 2016, the Court issued an opinion and order remanding Ms. G.'s first case for further proceedings. On January 9, 2017, the Appeals Council remanded the first case to the ALJ for further proceedings, consolidating the remand with the subsequent claim filed in October 2014.

On May 31, 2017, the ALJ conducted a new hearing, and, on June 21, 2017, the ALJ issued a new decision. The ALJ made the following residual functional capacity finding:

> After careful consideration of the entire record, the undersigned finds that the claimant has the physical residual functional capacity to perform a full range of work at all levels of exertion. She retains the mental residual functional capacity to perform simple, routine and repetitive tasks that a worker can learn through short demonstration and up to thirty days. She can maintain the concentration required to perform simple tasks, remember simple work like procedures, and

make simple work related decisions. She can maintain the attention and concentration as well as the persistence to perform such duties on a day-in and day-out basis, for eight hours per day, five days per week or within some other form of full time competitive work environment. As to social contacts, she is limited to superficial interactions with co-workers, supervisors, and public with superficial interaction defined as occasional and casual contact not involving prolonged conversation or discussion of involved issues. Her contact with supervisors still involves necessary instruction. The claimant is limited to work within a low stress job defined as requiring only occasional decision making and only occasional changes in the work setting. She can tolerate predictable changes in her workplace environment.

AR 687. Finding that Ms. G. could perform other work in the economy, the ALJ found that Ms. G. was not disabled. The Appeals Council declined review, and Ms. G. filed this action seeking judicial review of the Commissioner's decision.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's

3

own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform relevant past work; and
5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed

disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Ms. G. raises multiple arguments, but the Court need only address three that compel remand. The RFC as to concentration, persistence, and pace and as to social functioning is not supported by substantial evidence because the ALJ failed to mention, much less discuss and weigh, the opinions of state psychological consultants Dr. Hill and Dr. Gange and the ALJ improperly weighed the opinion of consultative examiner Dr. Neuman. In addition, the ALJ did not properly consider Listings 12.04 and 12.06 at step three of the sequential analysis.

### A.  Residual Functional Capacity—Opinion Evidence

The ALJ is required to "evaluate every medical opinion" regardless of its source. 20 C.F.R. §§ 404.1527(c), 416.972(c).[2] And the regulations set out factors to be considered in

---

[2] The rules set forth in 20 C.F.R. §§ 404.1527, 416.927 govern in this case as the claims were filed prior to March 27, 2017.

weighing medical opinions from treating sources, non-treating sources, and non-examining sources. *Id*. Portions of the opinions of psychological consultants Dr. Hill and Dr. Gange and of consultative examiner Dr. Neuman appear to be in conflict with the mental RFC for concentration, persistence, and pace and for social interaction. Because the opinions appear to suggest greater limitations than those imposed by the ALJ, remand is required for proper consideration of the opinions. The Court considers each opinion in turn.

1. **Dr. Hill and Dr. Gange**

In this case, the record contains medical opinions from state agency psychological consultants Benetta Johnson, Ph.D, S. Hill, Ph.D, and J. Gange, Ph.D. The ALJ discussed in detail the 2011 opinion of Dr. Johnson set forth in a Mental RFC Assessment form related to Ms. G.'s first application for benefits. AR 391–94. The ALJ gave great weight to Dr. Johnson's narrative opinions in Section III of the form, and the ALJ's RFC is largely consistent with those opinions. AR 393, 687, 695–97.

However, the ALJ failed to mention the 2015 opinions of Dr. Hill and Dr. Gange. AR 793–96, 807–10. The Commissioner suggests that the ALJ simply "did not expressly state the weight given to the opinions of Dr. Hill and Dr. Gange." Comm'r's Mem. 12, ECF No. 18. This is inaccurate; the ALJ did not acknowledge the opinions anywhere in his decision. As to concentration, persistence, and pace, both Dr. Hill and Dr. Gange found that Ms. G. has moderate difficulties. AR 792, 806. More specifically, they assessed moderate difficulties in the ability to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 794, 808. Notably, Dr. Johnson made the same finding of moderate difficulties

in maintaining concentration, persistence, and pace in the Psychiatric Review Technique form, which the ALJ did not discuss. AR 405. Dr. Johnson also checked the boxes for "moderately limited" in Section I of the Mental RFC Assessment form for "the ability to maintain attention and concentration for extended periods" and for "the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." AR 391. However, the ALJ did not credit these findings. AR 696.

Thus, in rating Ms. G.'s moderate difficulties in concentration, persistence, and pace, all three psychologists concurred that Ms. G. would have moderate difficulties with regard to (1) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; and (2) completing a normal workday and workweek without an unreasonable number and length of rest periods. AR 391–92, 794–95, 807–08. However, the ALJ did not account for these deficits in his RFC assessment or in the hypothetical to the vocational expert. As a result, it is unclear how the ALJ assigned an RFC for the ability to "maintain the attention and concentration as well as the persistence to perform such duties on a day-in and day-out basis, for eight hours per day, five days per week" when Ms. G. has moderate difficulties in completing a normal workday and workweek without an unreasonable number and length of rest periods. The Commissioner is correct that Dr. Hill found in his narrative RFC that Ms. G.'s attention and concentration were "moderately impacted, but appear reasonable for simple tasks." AR 796. But this comment does not address the ability to sustain attention and concentration for long periods of time. And, because the ALJ did not mention the opinion of Dr. Hill at all, the Court cannot infer that the ALJ was aware of, considered, or weighed the opinions. *See Craft*, 539 F.3d at 678 ("[W]e cannot tell whether the ALJ considered and rejected this piece of evidence because she did not mention it."). The failure to analyze the opinions of Dr. Hill and

Dr. Gange, which favor Ms. G.'s claim of disability, does not permit a means for adequate review by the Court.

The Commissioner argues that there was no error because these limitations were assessed in the "check box" section of the opinion forms. However, the worksheet findings from the state agency psychological consultants are "medical evidence which cannot just be ignored." *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). While an ALJ may rely on narrative descriptions from a consultative psychologist, the ALJ "still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the [Psychiatric Review Technique form] and [the Mental Residual Functional Capacity form]." *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (citing *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014)). Notably, Dr. Johnson's narrative assessment in Section III did not "encapsulate" the worksheet observations discussed above. *See Varga*, 794 F.3d at 816.

In addition, the ALJ did not discuss the moderate limitations with regard to social functioning found by Dr. Hill and Dr. Gange in the areas of interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. AR 793–95. These opinions conflict with the RFC crafted by the ALJ, which provides that Ms. G. was limited to "superficial interaction that is occasional (as opposed to frequent), casual (as opposed to intense), not involving prolonged conversation and with no more than necessary instruction from supervisors for the purpose of task completion." AR 696.

The ALJ explicitly commented that this finding was based on Dr. Johnson's 2011 assessment. AR 696–97. However, in contrast with Dr. Hill and Dr. Gange, Dr. Johnson rated Ms. G. as having *no* limitations in the areas of social functioning in the check box section of the

Mental RFC Assessment Form. AR 392. Moreover, the RFC limitations on social interaction assigned by the ALJ would not necessarily exclude from the vocational expert's consideration work environments in which Ms. G. might be in proximity to others that would result in undue distraction. Likewise, a limitation to occasional contact does not necessarily account for the moderate limitations in interacting appropriately with the general public or in responding appropriately to criticism from supervisors. As noted in the next section, these limitations are consistent with Dr. Neuman's opinion that Ms. G.'s ability to interact in a reasonably effective and stable manner with the general public and coworkers appeared impaired. Because the ALJ did not mention the opinions of Dr. Hill and Dr. Gange, the Court cannot know whether and to what extent the ALJ accounted for the moderate social limitations they assessed. *See Craft*, 539 F.3d at 678.

Finally, the Commissioner argues that the ALJ "not specifically stating the weight assigned to the opinions of Drs. Hill and Gange, despite the ALJ's consideration being so readily apparent," is "harmless because it does not change the substance of the decision." Comm'r's Mem. 13 (citing *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010); *Schomas*, 732 F.3d at 707). For the reasons set forth above, it is not readily apparent that the ALJ considered these opinions. And, the failure to discuss the opinions is not harmless because the Court cannot predict that the ALJ would craft the same RFC if he had incorporated the opinions. Given that the hypothetical posed to the vocational expert was based on the RFC, the Court cannot say that the same jobs would be identified as available to Ms. G. if all the opinion evidence had been considered.

Remand is required for the ALJ to discuss the opinions of Dr. Hill and Dr. Gange and to explain how their opinions regarding Ms. G.'s moderate limitations in concentration, persistence, and pace and in social functioning are taken into consideration in the RFC.

## 2. Dr. Neuman

The weight the ALJ gave to the opinion of Paula Neuman, Psy.D. is not supported by substantial evidence. Dr. Neuman performed a mental evaluation of Ms. G. for the Social Security Administration in 2015. AR 1238–43. In her medical source statement, Dr. Neuman opined that Ms. G.'s ability to interact in a reasonably effective and stable manner with the general public and coworkers appeared impaired. AR 1243. Dr. Neuman also opined that Ms. G. demonstrated difficulty with attention and focus and that Ms. G.'s ability to understand, remember, and carry out simple instructions in a sustained manner was mildly impaired. *Id*. The ALJ assigned "limited weight" to this opinion but gave reasons not supported by substantial evidence. As an initial matter, both Dr. Hill and Dr. Gange gave weight to Dr. Neuman's opinion, and Dr. Neuman's opinion is consistent with theirs. AR 793, 809. However, as the ALJ did not mention the opinions of Dr. Hill or Dr. Gange, the ALJ did not factor in that Dr. Hill and Dr. Gange relied on Dr. Neuman's opinion.

In addition, the reasons the ALJ gave for the limited weight assigned to the opinion are not sustainable. First, the ALJ "suspected" that Dr. Neuman relied too much on Ms. G.'s own subjective reporting of her symptoms. However, "a psychological assessment is by necessity based on the patient's report of symptoms and responses to questioning." *Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016); *see also Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) ("[P]sychiatric assessments normally are based primarily on what the patient tells the psychiatrist, so that if the judge were correct, most psychiatric evidence would be totally excluded from social security disability proceedings . . . .").

Second, the ALJ thought that "objective medical findings" contradicted Dr. Neuman's finding regarding impaired concentration, but the ALJ did not explain what those "objective

medical findings" were. The Commissioner is correct that the "more consistent a medical opinion is with the record as a whole, the more weight [is given] to that medical opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Yet, the ALJ did not support this conclusion with any examples. In contrast, Ms. G. notes that, in multiple Bowen Center records, her concentration was recorded as "normal." But, as a result of her severe impairment of bipolar disorder, "she has characteristically experienced variability of her symptoms with moods that were up and down, sleep difficulties, and sometimes finding it difficult to concentrate." AR 1279.

Third, the ALJ interpreted Ms. G.'s exam performance as undermining Dr. Neuman's finding with regard to Ms. G.'s impaired concentration. For example, the ALJ thought that Ms. G.'s inability to subtract serial sevens while still being able to spell a word backwards was inconsistent. However, Dr. Neuman did not find this inconsistent. Also, Dr. Neuman based the finding of Ms. G.'s difficulties with concentration on both the performance of those tasks as well as "additional observations of the claimant in the context of the evaluation." AR 1241.

Fourth, the ALJ commented that Dr. Neuman's evaluation was a "one-time" exam and that Ms. G. "knew the Social Security Administration requested the evaluation with Dr. Neuman, and they may either approve or deny her claim based on the results of the exam." AR 697. Yet, all consultative exams are "one-time" and are conducted in the context of an application for benefits. The ALJ does not give a good explanation for why this particular exam was not worthy of credit, nor does the ALJ explain why Ms. G.'s reporting of her symptoms to Dr. Neuman was unreliable. *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (recognizing that an examining source generally receives more weight than a non-examining source). On remand, the ALJ will have an opportunity to properly assess Dr. Neuman's opinion.

**B.     Step 3 Analysis—Listings 12.04 and 12.06**

Ms. G. argues that the ALJ erred at step three, despite having applied the new version of Listings 12.04 and 12.06, because the ALJ did not acknowledge that the Listings had new criteria or that the opinion evidence he relied on was given under the prior version of the Listings. Ms. G. also argues that the ALJ did not properly consider the "C" criteria and offers evidence that she meets the Listings when the "A" and "C" criteria are considered.

For Listings 12.04 for depressive, bipolar, and related disorders and 12.06 for anxiety and obsessive-compulsive disorders, Paragraph "A" lists the medical criteria that must be present in the medical evidence. 20 C.F.R. pr. 404, subpt. P, App. 1, § 12.00A.2.a. For both Listings, the "B" criteria paragraph requires "[e]xtreme limitation of one, or marked limitation of two" of the "areas of mental functioning" of "understand, remember, or apply information," "interact with others," "concentrate, persist, or maintain pace," and "adapt or manage oneself." *Id*. §§ 12.04B, 12.06B. The "C" criteria provision of both Listings states:

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), *or* a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

*Id*. §§ 12.04C, 12.06C (emphasis added).

In her opening brief, Ms. G. first notes that, although the ALJ applied these new Listings, which became effective January 17, 2017, the ALJ did not acknowledge that the Listings had changed. Thus, the ALJ did not address whether the opinion evidence that he relied on, which had been given under the prior version of the Listings, was still applicable. There is no indication

in the decision that the ALJ considered whether the updated medical evidence and new criteria may have changed the psychological consultant's pre-2017 finding that Ms. G.'s impairments did not medically equal a listed impairment.[3]

In addition, Ms. G. argues that she meets Listings 12.04 and 12.06 based on the "A" and "C" criteria. She contends that she has been regularly engaged in mental health treatment to diminish the symptoms and signs of her mental disorder with a "marginal adjusted and minimal capacity to respond to change." She cites the opinion of Dr. Timbrook as well testimony of her ex-boyfriend at the first hearing and her husband at the second hearing. In response, the Commissioner asserts that the ALJ properly found that Ms. G. does not meet the "C" criteria, but the Commissioner offers no analysis of the evidence.

Moreover, it is unclear whether the ALJ properly applied the new "C" criteria. The ALJ acknowledged that Ms. G. has a medically documented history of a disorder over a two-year period. But, then the ALJ wrote, with no further discussion: "However, the evidence does not show that there is both *mental treatment, mental therapy, psychosocial support* that is ongoing and diminishes the symptoms/signs of the mental disorder and marginal adjustment that is, minimal capacity to adapt to changes in the environment or to demands that are not already part of daily life." AR 686 (emphasis added). The ALJ's failure to include "or" in the phrase "mental treatment, mental therapy, *or* psychosocial support" makes it unclear whether the ALJ considered the three forms of treatment in combination or in the alternative.

---

[3] Ms. G. cites to *Goodrich v. Berryhill*, No. 4:18-CV-3, 2019 WL 459048, *9 (S.D. Ind. Feb. 5, 2019), to argue that the ALJ was required to obtain an updated medical opinion on equivalence. However, *Goodrich* applied SSR 96-6p, which is inapplicable here. In this case, the ALJ's June 21, 2017 decision is governed by SSR 17-2p, which provides that, if the ALJ believes that the evidence does not reasonably support a finding of medical equivalence, the SSA does "not require the adjudicator to obtain ME evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." Social Security Ruling 17-2p, 2017 WL 3928306, *3 (Mar. 27, 2017).

Finally, the Commissioner argues that the ALJ explained at step three that the decision contained "[a]dditional discussion of [Ms. G.'s] mental capacities . . . at Finding number five." AR 686. However, the ALJ made that comment in the context of the "B" criteria, not in analyzing whether Ms. G. meets the "C" criteria. And, the Commissioner does not identify which aspect of the ALJ's later RFC analysis addressed the "C" criteria.

Given the age of the opinion evidence, the new Listings, the misstatement of the "C" criteria, and the lack of analysis of the "C" criteria, the Court cannot say that the step three finding is supported by substantial evidence. Remand is required for a proper articulation of the reasoning regarding the "C" criteria. *See Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015) (finding inadequate an ALJ's analysis of Listing 1.04 because the ALJ failed to acknowledge several aspects of the record that could meet or equal the listing).

## V. CONCLUSION

The Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 23, 2019

/s/ JON E. DEGUILIO<br>Judge<br>United States District Court